UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MICHAEL BYERS, and other
similarly situated individuals,

    Plaintiff(s),                                   Case No.:    0:14-cv-62794-JIC

v.

PETRO SERVICES, INC., a Florida
corporation,

    Defendant.
_____/

**NOTICE OF FILING OF**
**DEFENDANT'S AMENDED ANSWERS AND OBJECTIONS**
**TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant, Petro Services, Inc., hereby gives notice of filing Defendant's Amended Answers and Objections to Plaintiff's First Set of Interrogatories in support of Petro's Motion for Summary Judgment, this 23rd day of March, 2015.

                                              NELSON MULLINS RILEY
                                            & SCARBOROUGH, LLP

                                            By: *s/ Matthew P. McLauchlin*
                                                  Lee D. Wedekind, III
                                                  Matthew P. McLauchlin

                                            Florida Bar No. 670588
                                            Florida Bar No. 484180
                                            50 N. Laura St., Suite 2850
                                            Jacksonville, Florida 32202
                                            (904) 665-3652 (direct)
                                            (904) 665-3699 (facsimile)
                                            lee.wedekind@nelsonmullins.com
                                            matt.mclauchlin@nelsonmullins.com
                                            diane.harrison@nelsonmullins.com
                                            luz.roman@nelsonmullins.com

                                            Attorneys for Petro Services, Inc.

## **CERTIFICATE OF SERVICE**

I certify that on March 23, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

R. Martin Saenz, Esq.
msaenz@saenzanderson.com
Julisse Jiminez, Esq.
jj@jjesq.com
Saenz & Anderson, PLLC
20900 NE 30th Ave., Ste. 800
Aventura, FL 33180

Attorneys for Plaintiff

                                               *s/ Matthew P. McLauchlin*
                                               Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MICHAEL BYERS, and other
similarly situated individuals,

    Plaintiff(s),   Case No.:   0:14-cv-62794-JIC

vs.

PETRO SERVICES, INC., a Florida
corporation,

    Defendant.
_____/

### DEFENDANT'S AMENDED ANSWERS AND OBJECTIONS
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Petro Services, Inc. ("Petro"), answers and objects to Plaintiffs' First Set of Interrogatories (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

1. Petro objects to the Interrogatories to the extent that they seek to impose any obligations beyond those provided for by the Federal Rules of Civil Procedure ("Rules") or any other applicable laws or rules.

2. Petro objects to the Interrogatories to the extent that they seek information that was prepared for or in anticipation of litigation, constitute attorney work-product, contain or divulge attorney-client communications, contain confidential or proprietary business information, or are otherwise protected from disclosure under applicable privileges, laws or rules. Petro does not intend to disclose information that is privileged or otherwise immune from discovery. Disclosure of any protected or privileged information in response to the Interrogatories shall be deemed inadvertent and shall not constitute a waiver or prejudice of

any privilege or any other ground for objecting to discovery with respect to any such documents nor shall such inadvertent disclosure waive or prejudice Petro's right to object to the use of any such information or documents during this or any subsequent proceeding.

3. Petro objects to the Interrogatories to the extent that they seek information prior to or beyond the scope of the subject dispute.

4. Petro objects to the Plaintiff's definitions of terms as set forth in the Interrogatories.

5. Petro objects to the Interrogatories to the extent that they seek information that is overly broad and unduly burdensome for Petro to locate and will result in an unreasonable expenditure of costs that exceeds the value and relevancy of finding any such information and is disproportionate to the amounts in controversy in this case.

6. Petro objects to the Interrogatories to the extent they seek information that is confidential/proprietary, absent the Court's entry of an agreed confidentiality/protective order.

7. Petro objects to the Interrogatories to the extent they request information that would require disclosure of Protected Health Information in accordance with the provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the Health Information Technology for Economic and Clinical Health Act (HITECH), and the implementing regulations to ensure the integrity and confidentiality of Protected Health Information.

8. Petro's answers and objections to the Interrogatories are made without waiving, or intending to waive, but on the contrary preserving, and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevancy, materiality, confidentiality, authenticity, admissibility, or any other proper grounds, as evidence for any purpose, in whole

or in part, the use of the responses provided by Petro, in any subsequent proceeding, or in any trial in this or any other action; (b) the right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of the Interrogatories to which Petro has responded herein; and (c) the right to amend, revise, correct, supplement, or clarify the answers and objections propounded herein.

9. No objection or limitation, or lack thereof, made in these answers and objections shall be deemed an admission by Petro as to the existence or nonexistence of information.

10. Petro's answers to the Interrogatories are made to the best of its personal knowledge, information and belief. Petro's discovery and investigation of the facts relevant to this case are ongoing.

11. All of these general objections shall be deemed continuing throughout the responses to the specific items of the Interrogatories that follow even when not further referred to in said responses. The failure to note the application of the general objections is not a waiver of these general objections with respect to any Interrogatory. Petro also reserves the right to assert additional general and specific objections arising from matters discovered during this litigation.

## ANSWERS AND OBJECTIONS

1. Please state the legal name, address, phone number, and social security number of the person responding to these interrogatories and the employment relationship that the same has with the Defendant.

    ANSWER:    Raymond G. Grass, III, Division Manager, Southeast Florida
                     on behalf of Petro Services, Inc.
                     7014 A.C. Skinner Parkway, Suite 290

>       Jacksonville, Florida 32256
>
>       **Petro objects to providing Mr. Grass' social security number on the basis that it is irrelevant and immaterial to these proceedings.**

2. Please state what Plaintiff's wages were during her (sic) entire employment period with you. Include what his hourly wage was, what his overtime wage was (if any), any and all bonuses that he received during his entire employment period with you.

>   <u>ANSWER</u>:   Petro objects to this interrogatory as overly broad in time and scope and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, at the time Petro hired Plaintiff as a Store Manager, it paid him a salary of $700 per week. Petro increased Plaintiff's salary to $750 per week in December 2011. Petro did not pay Plaintiff an hourly wage because as a Store Manager he was classified as an exempt salaried employee. In addition to his salary, Petro paid Plaintiff a performance bonus from time to time that was based upon meeting certain budgeted targets. Performance bonus amounts are set forth in the answer to interrogatory number 4 below.

3. Please state the names, phone numbers and addresses of all Plaintiff's supervisors for the time period Plaintiff was employed with Defendant.

>   <u>ANSWER</u>:   Petro objects to this interrogatory as overly broad in time and scope and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff's immediate supervisor was Mr. James Noonan, the District Manager. Mr. Ray Grass is Petro's Division Manager, Southeast Florida. Mr. Noonan's contact information is the same as that of Mr. Grass set forth in answer to interrogatory number one.

4. Please list all payments made by the Defendant to the Plaintiff. Include in your answer:

>   <u>ANSWER</u>:   Petro objects to this interrogatory as overly broad in time and scope and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Petro provided the following information:

4

>In 2014, Petro paid Plaintiff $30,375.00 in salary ($750.00 per week) and $5221.00 in performance bonuses.
>In 2013, Petro paid Plaintiff $39,000.00 in salary ($750.00 per week) and $9683.00 in performance bonuses.
>In 2012, Petro paid Plaintiff $38,950.00 in salary ($750.00 per week) and $4636.00 in performance bonuses.
>In 2011, Petro paid Plaintiff $36,400.00 in salary ($700.00 per week) and $7796.00 in performance bonuses.
>In 2010, Petro paid Plaintiff $36,400.00 in salary ($700.00 per week); complete data for performance bonuses in 2010 was not readily available;
>Payment data for 2009 was not readily available.

5. Please provide the following information with respect to Plaintiff's employment with Defendant, Date of hire; Job classification for which he was hired; Starting rate of pay and fringe benefits; whether Plaintiff's compensation rate changed during the course of said employment and, if so, the date of each such change in compensation, the basis for change (e.g., promotion, annual increase, etc.), and the amount thereof; and the date of termination of Plaintiff's employment, the rate of pay and fringe benefits and job classification then held, and the stated reasons for termination.

>ANSWER: Petro objects to this interrogatory as overly broad in time and scope and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Petro answers as follows:
>
>Date of hire: 3/23/2009
>Job classification for which Plaintiff was hired: store manager
>Starting pay: $700/week salary from 3/23/2009 to 01/04/2012, plus variable performance bonus
>Compensation change: Salary increase to $750/week as of 12/30/2011, implemented 1/5/2012 and paid to termination, plus variable performance bonus
>Basis for change in compensation: Years of service at Petro
>Date of termination: 9/29/2014
>Rate of pay at termination: $750/week salary
>Fringe benefits during employment: Dental Insurance, Vision Insurance, Health Insurance, 401k, Universal Life Insurance,

5

    Critical Illness Insurance, Heart and Stroke Insurance, Short Term Disability Insurance
    Plaintiff also had 12 days of vacation per year available after 1 year of service; 18 days of vacation available in 2014.
    Job classification at termination: store manager

6. Please state the name and address of the Defendant's accountant(s) for the years 2011 through 2014.

  **ANSWER**: **Petro objects to this request as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

7. Please state how many hours per week Plaintiff worked for Defendant in all weeks Plaintiff worked for Defendant?

  **ANSWER**: **Petro did not keep time records of the hours spent by Plaintiff and did not require Plaintiff to keep his time records, as he was an exempt Store Manager.**

8. Please provide the total amount of wages paid to Plaintiff in each week Plaintiff worked for Defendant?

  **ANSWER**: **See Answer to Interrogatory Number 4.**

9. How did you calculate how much you had to pay Plaintiff?

  **ANSWER**: **Plaintiff was paid a weekly salary. See Answer to Interrogatories 2, 4, and 5. Plaintiff's performance bonus varied and was based upon meeting certain budgeted targets each month.**

10. If you intend to call expert witnesses at the time of trial, please state the name, telephone number, and address of each and on what subject each is expected to testify.

  **ANSWER**: **Petro has not yet determined what, if any, experts it intends to call at trial.**

11. Please identify each person believed or known by you, your agents, or attorneys, to have heard or has purported to have heard the Plaintiff make any statement,

6

remark, or comment concerning the wage dispute described in the complaint and the substance of each statement, remark, or comment.

> ANSWER: Petro objects to this interrogatory as vague and overly broad on the grounds that Plaintiff and various representatives of Petro may have made many statements, remarks or comments during his employment with Petro, either verbal or written, that may "concern" the wage dispute. It is not possible for Petro to reasonably formulate an answer to this interrogatory without more context or narrowing to particular issues or time frames.

12. What facts form the basis of your allegation "Defendant is not liable to Plaintiff for any amounts pursuant to the Fair Labor Standards Act ("FLSA"), as Defendant employed Plaintiff in a bona fide executive, administrative, or professional capacity in accordance with 29 U.S.C Section 213 and related federal regulations, and Plaintiff was therefore exempt from federal overtime requirements."?

> ANSWER: Facts forming the basis of the stated defense include but are not limited to the following:

**Plaintiff's management of the store was the reason Petro hired Plaintiff. Plaintiff told Petro at the time of hiring that he had substantial relevant management experience and that he wanted to be hired as a manager of a Petro store. Petro hired Plaintiff to be a manager of a Petro store, and he managed store #1824. As a manager, Petro paid Plaintiff on a salary basis at an initial salary of $700 per week and later $750 per week. As store manager, Plaintiff was also eligible for and paid a performance bonus based on how well he managed the store to meet budgeted targets. No store employee other than the store manager was eligible for this performance bonus. As a store manager, Plaintiff also had 12 days of vacation per year available after 1 year of service; 18 days of vacation available in 2014. Hourly employees were eligible for 1 week of vacation. The highest paid hourly non-exempt employee at store 1824 was an assistant manager who was paid from $9.00 to 10.00 per hour.**

**Plaintiff was required to work six days per week, eight hours per day, typically Monday through Saturday. He regularly worked the first shift (6 a.m. to 2 p.m.) and each day he supervised at least two subordinate employees during the entire shift. Thus, Mr. Byers customarily and regularly managed more than 80 hours worth of subordinate work per week.**

7

As store manager, Mr. Byers' managerial duties included, but were not limited to the following:
- Recruiting, calling back, interviewing, selecting/hiring new hires
- Providing new hires necessary paperwork and ensuring compliance with and transmittal to corporate
- Setting new hires' rates of pay
- Scheduling new hires for off-site initial training
- Ordering and obtaining new hire uniforms
- Ensuring new hire in-store training on tasks/duties of job
- Ensuring employees received required certifications (food safety, UST, and others)
- Setting, adjusting, coordinating, and correcting the work hours and schedule for all store employees
- Making adjustments to the schedule based upon employee sickness, vacation
- Authorizing employee vacation and time off requests
- Controlling labor costs and hours through discretionary hiring and scheduling decisions, including requiring employees to clock out to save on labor costs and avoid excess overtime
- Directing, assigning, and supervising employees in his discretion on the tasks/work to do, when to do them, and how to do them
- Assigning in his discretion tasks for employees and/or assistant managers to accomplish on the shifts on which Plaintiff was not present and following up to ensure compliance;
- Recommending/ensuring pay raises for good employee performance, such recommendations being given particular weight
- Monitoring, evaluating, and appraising employees' performance (on all shifts) for purposes of recommending promotions or for counseling/discipline/termination Ensuring employee compliance with all company policies/procedures
- Counseling/disciplining/suspending employees in his discretion for nonperformance, absence, violation of company policies/procedures, short cash drawers, theft, poor attitude, and any other issues
- Documenting all employee counseling/discipline and transmitting to corporate files
- Recommending employees for termination, which recommendations were given particular weight by the company
- Receiving, documenting, and handling employee complaints
- Ensuring the fixing of time clock errors for the employees
- Assessing and planning the work that needed to be done each day by all shifts
- Training and directing employees how to accomplish the work to be done
- Implementing the budget/store targets; discretion in ordering, staffing to meet budgeted targets (i.e. labor hours, labor cost, inventory overages/shortages)
- Determining the merchandise to be ordered/purchased/stocked/sold and ordering/receiving/inventorying all store merchandise and supplies
- Controlling the distribution of merchandise and monitoring/controlling inventory levels to avoid overages and shortages
- Managing all financial aspects of store in his discretion to meet P&L targets

8

- Responsible for safety of employees – ensuring training on safety issues and identifying, reporting, and ensuring correction of unsafe conditions
- Resolving problems with vendors/deliveries
- Identifying, reporting, and ensuring maintenance/repair issues promptly addressed
- Reporting/documenting employee injuries
- Reporting/documenting customer injuries
- Monitoring for, reporting, documenting, and responding to employee theft, customer theft, including audits of employees' cash registers, using video surveillance
- Responding to/documenting/resolving customer complaints
- Preparing and transmitting numerous reports/forms/information to corporate, including but not limited to daily store report
- Evaluating employees and preparing employee evaluation forms
- Attending regular management meetings to be trained on managerial level issues
- Conducting in-store meetings with employees regarding policies, procedures, performance, safety, training issues
- Ensuring daily counting and deposit with the bank of all money brought into the store and accounting for and disciplining any employees for any cashier drawer shortages, lotto shortages, etc.

In addition to the above, copies of the management training materials and other information in Plaintiff's personnel file that were presented to Plaintiff throughout his employment demonstrate his responsibilities as a manager of the store.

Additionally, at all times, management of the store and its employees was Plaintiff's primary, main duty and the most important thing he did at the store. The store could not have operated without Plaintiff performing his managerial duties described above. For instance, if Plaintiff was not performing his managerial duties, numerous critical aspects of the store would not be accomplished, including but not limited to that no store employees would be hired and trained, and no one would set the schedule, enforce company policy, ensure the work was being accomplished by the employees, ensure counting/depositing money, ensure ordering of necessary merchandise, ensure necessary reporting and forms were transmitted to corporate, ensure maintenance/repairs to the store and its equipment, or ensure discipline, order, and termination of employees.

At all times, Plaintiff was in charge of the store and was the highest ranking employee at the store as a whole and while on his shifts. Plaintiff was always acting as a manager/supervisor 100% of the time. Petro corporate looked to the Plaintiff as the sole person responsible to answer for any problem or issue at the store and Plaintiff was solely held responsible for the store's overall financial success.

Plaintiff was regularly free from direct supervision and had significant discretion in critical aspects of the store's operation and success. Plaintiff was provided budgeted financial targets, and it was up to him in his discretion to hire employees, train them, manage them, schedule them, and pay them in a manner that would most efficiently and

9

**successfully operate the store. Plaintiff was also responsible for and had discretion in merchandise ordering and was responsible for the control/management of the merchandise to avoid overages/shortages so he would meet his store's financial targets. Petro made Plaintiff eligible for a performance bonus to incentivize him to make wise choices in all aspects of his management of the store. A District Manager overseeing 10-15 stores would visit Plaintiff's store usually no more than once a week and often less frequently. Petro's Division Manager, Southeast Florida would visit the store occasionally as well. Apart from these occasional site visits from upper management, Plaintiff was always the highest ranking employee present at the store and was in charge.**

13. What facts form the basis of your allegation that "Defendants cannot be liable for or on account of an alleged failure to pay minimum wages or overtime compensation under the FLSA because the acts or omissions complained of were in good faith in conformity with and in reliance on written administrative regulations, orders, rulings, approvals, or interpretations of the U.S. Department of Labor (the "Department"), and/or the Department's administrative practices or enforcement policies with respect to the class of employees to which Plaintiff claims to have belonged."?

    ANSWER:   See Answer to Interrogatory 12.

14. What facts form the basis of Defendants allegation that "Plaintiff's claims are barred, in whole or part, by the applicable statutes of limitations or the doctrines of laches, estoppel, and/or waiver."?

    ANSWER:   Petro objects to this request as it seeks a legal conclusion or analysis from a fact witness. In addition, the asserted affirmative defense has been modified in Defendant's First Amended Answer and Affirmative Defenses.

15. What facts form the basis of your allegation that "Plaintiff is barred by the Statute of Limitations from seeking wages for work performed more than two years prior to filing her Complaint?"

    ANSWER:   Petro objects to this request as it seeks a legal conclusion or analysis from a fact witness.

10

16. What facts form the basis of your allegation that "Plaintiff's claims are barred, in whole or part, by the failure of Plaintiff to mitigate his alleged damages."?"

ANSWER: Petro objects to this interrogatory as moot on the grounds that the asserted affirmative defense has been withdrawn.

17. What facts form the basis of your allegation that, "Some or all of Plaintiff's non-exempt work, if any, was performed concurrently with exempt work."?

ANSWER: To the extent Plaintiff claims he performed non-exempt work while employed at Store #1824, his doing so was not a primary responsibility or duty. If Plaintiff performed any non-exempt work, he would have done so on a non-routine basis. At all times, Plaintiff functioned in and carried out his primary exempt duty of managing and supervising Store 1824 and its employees, over which he was continuously in charge.

18. What facts form the basis of your allegation that, "Some or all of Plaintiff's non-exempt work, if any, was directly and closely related to the performance of his exempt work."?

ANSWER: See Answer to Interrogatory Number 17.

19. What facts form the basis of your allegation that, "Plaintiff's claims are barred, in whole or part, by the doctrines of accord and satisfaction, unclean hands, payment, conditions precedent, and/or avoidable consequences."?

ANSWER: Petro objects to this interrogatory on the grounds that the asserted affirmative defense has been withdrawn.

20. What facts form the basis of your allegation that, "Some or all of the alleged time for which Plaintiff seeks compensation is de minimis, the claim size is minimal, or Plaintiff did not perform the work on a regular basis."?

ANSWER: See Answer to Interrogatory Number 17.

21. What facts form the basis of your allegation that, "Some or all of the alleged time for which Plaintiff seeks compensation is not compensable as it was spent performing activities that were preliminary to or occurred following the principal activity or activities that he was employed to perform."?

ANSWER: See Answer to Interrogatory Number 17.

22. What facts form the basis of your allegation that, "Some or all of the alleged activities for which Plaintiff seeks compensation were not "work" within the meaning of the FLSA. Such activities were not pursued necessarily and primarily for the benefit of Defendant, and/or were not integral and indispensable to a principal activity of his employment, and/or were taken for Plaintiff's own convenience."?

ANSWER: See Answer to Interrogatory Number 17.

23. What facts form the basis of your allegation that, "Some or all of Plaintiff's alleged nonexempt work consisted of occasional, infrequently-recurring tasks that could not practicably be performed by non-exempt employees."?

ANSWER: See Answer to Interrogatory Number 17.

24. What facts form the basis of your allegation that, "the Complaint fails to state a claim for liquidated damages because Defendant's acts or omissions giving rise to this action were in good faith and they had reasonable grounds for believing that their acts or omissions were not violations of the FLSA."?

ANSWER: See Answer to Interrogatory Number 12.

25. Identify and describe the factual basis for each of your denials of Plaintiff's Complaint.

ANSWER: See Answer to Interrogatory Number 12.

Dated: March 5, 2015.

          NELSON MULLINS RILEY & SCARBOROUGH, LLP

          By: */s/ Matthew P. McLauchlin*
              Lee D. Wedekind, III
              Matthew P. McLauchlin

          Florida Bar No. 670588
          Florida Bar No. 484180
          50 N. Laura Street, Suite 2850
          Jacksonville, Florida 32202
          (904) 665-3652 (direct)
          (904) 665-3699 (facsimile)
          lee.wedekind@nelsonmullins.com
          matt.mclauchlin@nelsonmullins.com
          diane.harrison@nelsonmullins.com
          luz.roman@nelsonmullins.com

          Attorneys for Petro Services, Inc.

## VERIFICATION

STATE OF FLORIDA

COUNTY OF Broward

Personally appeared before me **Raymond G. Grass, III**, who being duly sworn according to law, deposes and says that he is the **Division Manager, Southeast Florida of Defendant, Petro Services, Inc.**, a Florida corporation, and is authorized to make this affidavit on Defendant's behalf; that the information provided in Defendant's Answers to Plaintiffs' First Set of Interrogatories to Defendant in the above-captioned case, is true and accurate to the best of his knowledge, information and belief.

_____
Raymond G. Grass, III, Division Manager,
Southeast Florida, Petro Services, Inc.

Sworn to and subscribed before me,
this 04 day of March, 2015.

_Alexandra Urdaneta_
Notary Public
My Commission Expires 02/07/2016

ALEXANDRA URDANETA
Notary Public, State of Florida
Commission# EE 167459
My comm. expires Feb. 7, 2016

## Certificate of Service

I certify that on March 5, 2015, a copy of the foregoing was furnished by e-mail to:

R. Martin Saenz, Esq.
msaenz@saenzanderson.com
Julisse Jiminez, Esq.
jj@jjesq.com
Saenz & Anderson, PLLC
20900 NE 30th Ave., Ste. 800
Aventura, FL 33180

Attorneys for Plaintiff

/s/ Matthew P. McLauchlin
Attorney

~#4821-3987-6385~