UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62794-CIV-COHN/SELTZER

MICHAEL BYERS,

    Plaintiff,

v.

PETRO SERVICES, INC.,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment [DE 21]. The Court has reviewed the Motion, Plaintiff's Response [DE 33], and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court determines that Plaintiff comes within the FLSA's executive-employee exemption from overtime requirements. Accordingly, the Court will grant the Motion, and will enter judgment in Defendant's favor.

**I.  BACKGROUND**

In this action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, Plaintiff Michael Byers alleges that Defendant Petro Services, Inc. ("Petro Services") failed to pay him overtime wages as required by law. Petro Services hired Byers in 2009 to manage one of its convenience stores: Store 1824. Deposition of Michael Byers, Mar. 5, 2015 (DE 24-1 & 24-2), at 10:13–14, 38:23–39:10. Byers' employment was terminated in 2014. Id. at 10:15–16. Petro Services paid Byers a salary of $700 to $750 per week during his employment, in addition to occasional bonuses. Id. at 16:19–19:3.

Byers alleges that he worked an average of 60 hours per week during his employment with Petro Services. Compl. ¶ 9. Byers contends that he was never paid overtime wages for the time he worked in excess of 40 hours per week. Id. Byers asserts that this failure to pay overtime violated the FLSA. Byers has raised a single claim against Petro Services on this basis for the recovery of unpaid overtime wages. Id. ¶¶ 4–15.

Petro Services now moves for summary judgment on Byers' claim for unpaid overtime. In the Motion, Petro Services argues that it was not required to pay overtime wages to Byers, because he was an executive or administrative employee exempt from the FLSA's overtime requirements.

## II.   LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of

fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

### III. DISCUSSION

Byers has asserted a claim under the FLSA for unpaid overtime. The FLSA generally requires an employer to pay its employees time-and-a-half for any work beyond forty hours per week. 29 U.S.C. § 207(a). However, the FLSA contains exemptions from this overtime requirement. As relevant here, the FLSA's overtime-compensation requirements do not apply to executive or administrative employees. 29 U.S.C. § 213(a)(1). Petro Services contends in its Motion that Byers was an executive or administrative employee, thus it was not required to pay him overtime under the FLSA. The Court agrees with Petro Services that Byers falls within the FLSA's exemption for executive employees. Accordingly, Petro Services is entitled to summary judgment on Byers' claim against it.

The FLSA's exemptions are narrowly construed. Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995) (per curiam). An employer asserting an exemption bears the burden of establishing that the exemption applies by clear and affirmative evidence. Calvo v. B & R Supermarket, Inc., __ F. Supp. 3d __, No. 13-

24000, 2014 WL 5473565 at *9 (S.D. Fla. Oct. 28, 2014). With respect to the executive exemption, an employee working in an executive capacity means an employee:

1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;

2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

3) Who customarily and regularly directs the work of two or more other employees; and

4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

For purposes of the Motion, Byers acknowledges that he was compensated on a salary basis of more than $455 per week, and that he directed the work of two or more other employees. Resp. 9. Accordingly, the only disputed issues relate to the nature of Byers' primary duty and whether he had substantial influence over the hiring, firing, advancement, or promotion of other employees. The Court will address each of these issues in turn.

### A. Byers' Primary Duty Was Management

The executive exemption only applies if the employee's primary duty is management. Byers' title while employed by Petro Services was "store manager." Declaration of Michael Byers (DE 34-1) ¶ 5. However, Byers' title is not dispositive of his primary duty. Instead, the Court must examine the surrounding facts to determine whether Byers' "most critical duties to the enterprise were his exempt managerial duties." Rutenberg v. Boynton Carolina Ale House, LLC, No. 09-80409, 2010 WL

4

135100 at *3 (S.D. Fla. Jan. 8, 2010) (citing Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008)). In resolving this issue, "[h]ow an employee spends her time working is a question of fact, while the question of whether the employee's particular activities exclude her from the overtime benefits of the FLSA is a question of law." Langley v. Gymboree Operations, Inc., 530 F. Supp. 2d 1297, 1301 (S.D. Fla. 2008) (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)).

In examining whether an employee's primary duty is management, the Court is guided by regulations from the Department of Labor:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. This inquiry involves consideration of a number of factors:

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. . . .
>
> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of

5

> their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion. . . .
>
> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700. Furthermore:

> Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive. . . .
>
> For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

29 C.F.R. § 541.106(a), (b).

At his deposition, Byers testified that when he applied to work with Petro Services, he sought a managerial position. Byers Dep. 38:22–25. And indeed, Petro Services hired him for a managerial position: manager of Store 1824. Id. at 39:5–10;

6

Byers Decl. ¶ 5. As the store manager, Byers was responsible for attracting, interviewing, and hiring employees. Byers Dep. 42:18–44:25, 74:20–75:14. Byers had discretion to set the rate of pay for new hires within a certain range. Id. at 50:18–52:7. Byers was responsible for making sure that the employees under his supervision were properly trained. Id. at 46:3–47:22, 56:12–58:21, 62:5–63:23. Byers assigned, directed, and monitored the quality of the work of the other employees. Id. at 95:3–98:19, 102:7–104:9, 133:17–138:16. If their work was subpar, Byers was responsible for disciplining them. Id. at 64:15–65:18, 86:4–87:9. Byers was also responsible for making sure that the store maintained its supplies of merchandise. Id. at 151:18–153:18, 157:4–159:18. In short, Byers—in his own words—was "in charge" of the store. Id. at 260:6–261:5; see also id. at 99:1–17, 204:14–205:15. The Court has no trouble concluding on the basis of these facts that Byers' primary duty was the management of Store 1824. See 29 C.F.R. §§ 541.102, 541.700.

    Byers contests that management was his primary duty. Byers first argues that he "did not spend anywhere close to fifty[ ]percent of his time doing supervisory work." Resp. 10. Byers contends that the "vast majority" of his time was spent performing menial tasks in the operation of the store similar to those performed by other employees. Resp. 10. However, the amount of time an employee spends on a given task is not determinative of his primary duty; rather, the question is which duties constituted the primary value the employer placed on the employee. Altman v. Sterling Caterers, Inc., 879 F. Supp. 2d 1375, 1383 (S.D. Fla. 2012). That an employee is performing menial tasks alongside non-management employees does not mean that the employee was not simultaneously fulfilling a managerial role. Calvo, 2014 WL 5473565

7

at *13; Jackson v. Advance Auto Parts, Inc., 362 F. Supp. 2d 1323, 1334–35 (N.D. Ga. 2005). "[T]he case law is replete with decisions holding managers of retail establishments to be exempt [as executive employees], notwithstanding the fact that they spent the majority of their time performing non-exempt tasks . . . ." Posely v. Eckerd Corp., 433 F. Supp. 2d 1287, 1302 (S.D. Fla. 2006).

In this case, Byers had a great deal of discretion in the store's operation, and appears to have borne responsibility for many of the big and small decisions—from hiring personnel to keeping the store supplied with goods—which constitute "management" for FLSA purposes. See 29 C.F.R. § 541.102. These management responsibilities were a defining element of his employment with Petro Services, notwithstanding that he also contributed manual labor. Indeed, it appears from Byers' deposition testimony that even the extent and nature of the labor he performed were the subject of his own managerial judgment. See Byers Dep. 98:8–25; cf. 29 C.F.R. 541.106(a) ("Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work."). The Court thus rejects Byers' argument that menial tasks, as contrasted with his managerial responsibilities, were his primary duties.

In opposition to the Motion, Byers also attempts to downplay his managerial discretion and the degree of responsibility he shouldered. Byers has submitted a Declaration in connection with his Response in which he minimizes the freedom of judgment he had in running the store, emphasizes the amount of control exercised by Petro Services' regional supervisors, and places particular importance on the menial

8

tasks he performed. See generally Byers Decl. "However, where Plaintiffs down-play and minimize the importance of their positions, testifying that they spent most of their time performing routine non-managerial jobs, the courts have tended to reject such post-hoc efforts to minimize the relative importance of managerial duties." Jackson, 362 F. Supp. 2d at 1334 (internal quotation marks omitted). Moreover, as noted by Petro Services, Byers' deposition testimony refutes the Declaration's characterization of his work. For example, Byers writes in his Declaration that he often was not in charge of the store even if physically present. Byers Decl. ¶ 41. But at his deposition, Byers testified that he was in charge whenever he was at the store. Byers Dep. 204:14–19. Similarly, Byers states in the Declaration: "I did not have the authority to set the rate of pay for employees." Byers Decl. ¶ 63. But at his deposition, Byers testified that he did determine what wage new hires would receive. Byers Dep. 50:1–54:18. As discussed in more detail infra, pp. 10–11, Byers' Declaration also conflicts with his deposition testimony regarding his ability to hire and fire other store employees.

These contradictions are only a sampling of the ways in which Byers' Declaration stands in opposition to his earlier deposition testimony. Where a party has given clear testimony on a topic, the party cannot later create an issue of fact by submitting a declaration that contradicts, without explanation, the prior testimony. Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); Hall v. Burger King Corp., 912 F. Supp. 1509, 1536 (S.D. Fla. 1995). The Court therefore rejects Byers' attempt to create an issue of fact regarding the extent of his managerial duties through the submission of a Declaration which conflicts with his deposition testimony on key points.

Byers' assertion that Petro Services' regional supervisors and corporate guidelines limited his discretion also fails to defeat Petro Services' showing that Byers' primary duty was managerial. A managerial employee may come within the FLSA's executive exemption even where her discretion is circumscribed by corporate policies or the employee reports to a supervisor. Calvo, 2014 WL 5473565 at *15; Jackson, 362 F. Supp. 2d at 1335–36. In this case, the record reflects that even though Byers was required to adhere to certain corporate policies and reported to regional supervisors, he exercised substantial independent discretion and control over the performance of his duties and the store's operations, or in other words, acted as a manager. See 29 C.F.R. § 541.700(c). Considering together the facts in the record, the Court therefore determines that Petro Services has clearly shown Byers' primary duty to be managerial.

## B. Byers Had Substantial Influence over the Hiring and Firing of Other Employees

To establish the applicability of the exemption for executive employees, Petro Services must also show that Byers "ha[d] the authority to hire or fire other employees," or that his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a). At his deposition, Byers testified that he had authority to hire employees, and to fire them without prior approval in the event of theft. Byers Dep. 42:18–44:25, 74:20–75:14, 99:1–7, 108:16–19. Byers further testified that where he lacked the authority to terminate an employee without approval from his own supervisor, Petro Services relied upon and typically followed Byers' recommendations regarding terminations. Id. at 90:18–93:4, 270:2–11. The record thus reflects that this element of the executive-employee exemption is satisfied.

In his Declaration, Byers again attempts to create an issue of fact by contradicting his prior deposition testimony and downplaying his influence over employment decisions. See, e.g., Byers Decl. ¶ 59 ("While working for Petro, I never had the authority to fire other employees."); see also id. ¶¶ 57–68. But as the Court has previously noted, a party cannot create an issue of fact in the face of an unfavorable record by the simple submission of a declaration contradicting his prior, unequivocal testimony. Van T. Junkins & Assocs., Inc., 736 F.2d at 657. Accordingly, Byers' assertions in his Response that "[i]t is clear from the record that Byers did not have the authority to hire or fire employees" (Resp. 15), and that "[n]othing in the record suggests that Byers' recommendations [regarding employment decisions] were given particular weight" (id. at 16), do not withstand scrutiny.

## IV.  CONCLUSION

Petro Services has established that each element of the executive exemption to the FLSA's overtime requirements, set forth in 29 C.F.R. § 541.100(a), is satisfied. Byers does not contest that he was paid more than $455 per week on a salary basis, and that he directed the work of two or more other employees. Petro Services has also shown that Byers' primary duty was management; that Byers had the authority to hire employees or fire them for theft; and that Byers' recommendation to terminate an employee in other circumstances was given particular weight. Because Petro Services has established that the executive exemption applies, it is entitled to judgment on Byers'

11

sole claim for unpaid overtime under the FLSA. See Diaz v. Team Oney, Inc., 291 F. App'x 947, 950 (11th Cir. 2008) (per curiam).[1] It is accordingly

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 21] is **GRANTED**. The Court will enter a separate final judgment consistent with this ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 21st day of May, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

---

[1] Because the applicability of the executive exemption is dispositive of this action, the Court declines to address Petro Services' additional argument that Byers comes within the FLSA exemption for administrative employees.